UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MARTIE DAVIDSON,

                Plaintiff,

v.

DESCHUTES COUNTY, JOHN and CAREN BURTON, CHRIS KABER, and JENNIFER GASPARD,

                Defendants.

6:15-cv-52-TC

FINDINGS AND RECOMMENDATION

COFFIN, Magistrate Judge:

Plaintiff, Martie Davidson bring this action asserting claims for malicious prosecution, libel/slander/defamation, and false arrest under federal and state law. Plaintiff also seeks a declaration that a policy of adding charges to indictments without probable cause is unconstitutional. Finally, plaintiff asserts a claim for punitive damages.

## ALLEGATIONS

Defendants John Burton and Caren Burton left their dog Zoe at Deschutes Pet Lodge from July 24, 2009 until July 27, 2009. Plaintiff worked at the Pet Lodge.

Page 1 - FINDINGS AND RECOMMENDATION

On July 28, 2009, the Burtons took Zoe to the vet, but it does not appear that the vet suspected broken ribs at that time. On August 1, 2009, the Burtons took Zoe to an animal emergency center where x-rays revealed fractures of the eighth and ninth ribs and possible fracture of the seventh on the dog's left side . On August 3, 2009, Dr. Jodi Kettering determined that the injuries were consistent with being hit by a motor vehicle.

Zoe's conditioned worsened and on August 5, 2009, Kettering referred Zoe to Northwest Veterinary Specialists where x-rays revealed fractures of the sixth through eleventh ribs on the left side. Subsequent x-rays on August 6 and September 9, 2009, confirmed the diagnosis.

The Burtons accused the Deschutes Pet Lodge of causing the injuries to Zoe and allegedly embarked on a publicity campaign in an effort to get the County Sheriff to arrest someone at the Lodge. Defendant Deschutes County Sheriff's deputy Jennifer Gaspard interviewed a lodge employee who told her that he had seen plaintiff acting upset with Zoe by pulling on her leash. Gaspard then focused her investigation on plaintiff asking her to submit to a polygraph exam.

Defendant Oregon State Police Officer Chris Kaber performed the exam on October 29, 2009 and, along with Gaspard, allegedly coerced plaintiff into accepting responsibility for Zoe's injuries. Plaintiff admitted that a kennel door might have bumped Zoe when plaintiff brought her back from the exercise yard and Gaspard and Kaber allegedly coerced plaintiff into believing such "possible bump" was in fact the cause of Zoe's injuries. Gaspard arrested plaintiff on a charge of first degree animal abuse allegedly without probable cause.

Plaintiff alleges that Gaspard and Kaber either intentionally or recklessly gave false information to the Deschutes County District Attorney that plaintiff had confessed to causing Zoe's injuries for the sole purpose of persuading the District Attorney to prosecute plaintiff for crimes they

knew she did not commit.

Plaintiff alleges that the District Attorney's office had a policy of deliberately charging more serious crimes than warranted to force a plea and when plaintiff did not plea to the original charges, the District Attorney increased the charges to aggravated animal abuse in an attempt to force plaintiff to forego her right to trial.

The Burtons continued their public campaign against plaintiff during the criminal prosecution allegedly libeling and slandering plaintiff.

By May 26, 2010, x-rays revealed Zoe had eight fractured ribs on her left side and three on her right. Zoe died around June 1, 2010 and nearly all of Zoe's ribs had fractures by that point. Plaintiff alleges no rational person could believe Zoe's injuries were caused by the actions to which plaintiff admitted.

After a four day trial, a jury acquitted plaintiff of all charges on January 11, 2013. Plaintiff alleges that the arrest and subsequent prosecution caused severe emotional distress as well as public humiliation. Plaintiff also alleges that the charges resulted in suspension from her job without pay. Ultimately, plaintiff alleges she had to leave central Oregon to find employment and peace of mind.

Plaintiff alleges three malicious prosecution claims, pursuant to 42 U.S.C. § 1983, against Deschutes County asserting lack of probable cause to support the prosecution and/or that subsequent information dissipated probable cause. Plaintiff also seeks a declaratory judgment that Deschutes County's prosecution via added charges, unsupported by probable cause, to force waiver of a right to trial, is unconstitutional. Plaintiff also seeks punitive damages against Deschutes County.

Plaintiff also alleges claims for malicious prosecution, and libel/slander/defamation against John and Caren Burton. Additionally, plaintiff alleges claims for violation of her Fourth

Amendment rights and malicious prosecution against Chris Kaber and Jennifer Gaspard. Finally, plaintiff alleges a false arrest claim against Chris Kaber.

Defendants John and Caren Burton seek summary judgment as to ths claims against them. Defendant Chris Kaber moves to dismiss and defendants Deschutes County and Jennifer Gaspard also move to dismiss.

## DISCUSSION

A.   John and Caren Burton's Motion for Summary Judgment (#10)

Defendants John and Caren Burton seek summary judgment arguing that plaintiff previously released the claims alleged against them. The Burton defendants also allege that the statute of limitations has run on the libel/defamation/slander claim.

On May 24, 2010, the Burtons instituted a civil action against plaintiff and Deschutes Pet Lodge in Deschutes County alleging conversion and intentional infliction of emotional distress related to the injuries to and death of their dog Zoe.

On March 20, 2013, after plaintiff's acquittal and during the civil litigation with the Burtons, plaintiff's criminal defense attorney wrote to the Burtons requesting they delete any allegation, on their website, that plaintiff was responsible for the death of their dog. Plaintiff's criminal attorney warned that if they did not cease and desist, plaintiff would have no recourse but to bring an action for libel, slander, and defamation.

On July 19, 2013, a judgment of dismissal without prejudice was entered in the civil case. On July 22, 2013, the parties in the civil case submitted, through counsel, a stipulation and order of dismissal with prejudice. The stipulation recited that all claims asserted or which could have be

Page 4 - FINDINGS AND RECOMMENDATION

asserted by the parties in the civil case, have been finally and forever resolved with prejudice and without costs. The stipulation is signed by counsel for the plaintiffs and counsel for the defendants, Deschutes Pet Lodge and plaintiff. It does not appear that the judge in the civil case signed the stipulation.

Plaintiff's claim for malicious prosecution accrued when the prosecution was terminated. See, e.g., White v. Pacific Telephone & Telegraph Co., 168 Or. 371, 374 (1942) (citing Restatement, Torts, section 898). In addition, plaintiff had already asserted that she would institute claims for libel/defamation/slander related to the Burton's publicity campaign, the facts of which were the primary basis for the Burton's civil claims in Deschutes County.

Even though the stipulation does not appear to have been entered by the court as a judgment, the court should still treat it as a contract. A release is a contract that is subject to the ordinary rules of contract construction. Ristau v. Wescold, Inc., 318 Or. 383, 387 (1994). Disputes over the meaning of a contract may be disposed of by summary judgment only if the contract's terms are unambiguous. Biomass One, L.P. v. S–P Construction, 120 Or.App. 194, 200, 852 P.2d 847 (1993). Whether a contract is ambiguous is a question of law. Yogman v. Parrott, 325 Or. 358, 361 (1997). A contract is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person. Deerfield Commodities v. Nerco, Inc., 72 Or.App. 305, 317 (1985). Plaintiff does not appear to dispute that the broad language of release in the stipulation unambiguously released each party to any claims that could have been brought in the underlying civil case brought by the Burtons. Indeed, the state law claims for malicious prosecution and slander in this case share much of the underlying operative facts of that case and, even though the release does not include "known or unknown language," no reasonable fact finder could conclude that plaintiff was unaware of the basis for the

Page 5 - FINDINGS AND RECOMMENDATION

claims at the time the parties entered into the stipulation.

Plaintiff does argue that she did not authorize her counsel to enter into the stipulation on her behalf, but presents no evidence to support such a claim beyond her mere denial. The stipulation includes the signature of her attorney, Christine Tavares, and it explicitly notes Tavares' capacity as attorney for Martie Davidson. Plaintiff provides no evidence that she did not receive a copy of the court filing and why she did not seek to have it stricken if she did not authorize it.[1] Plaintiff cannot derive the benefit of the dismissal of the case against her with prejudice and without cost while at the same time retaining her right to sue based on facts underlying the prior litigation.

Releases are a species of settlement agreement and, as such, are favored by the law. See Walcutt v. Inform Graphics, Inc., 109 Or.App. 148, 151 (1991). Thus, an otherwise "unimpeachable" release agreement will not be set aside merely because it was improvident. See Wheeler v. White Rock Bottling Co., 229 Or. 360, 367 (1961). However, under limited circumstances, enforcement of a release may be barred if the release was the product of misrepresentation or unconscionable conduct. See Raymond v. Feldmann, 120 Or.App. 452, 455 (1993). For instance, enforcement of a release may be barred where it was (1) unilaterally coerced or imposed rather than resulting from arm's-length negotiations between the parties; (2) not the result of independent representation; or (3) was based on a misrepresentation of the nature, effect, or scope of the agreement, or a misrepresentation of the value or merit of an asserted legal claim. See, e.g., Whitehead v. Montgomery Ward & Co., Inc., 194 Or. 106, (1952) (release agreement is invalid where there was a great disparity between amount paid to the plaintiff and the damages actually sustained, the

---

[1] Plaintiff merely states, "I did not authorize my attorney in the civil case to release any claims against the Burtons. At no time was I offered any consideration for release of my claims." Declaration of Plaintiff (#13) at ¶ 5.

Page 6 - FINDINGS AND RECOMMENDATION

defendant misrepresented that the writing was a receipt and not a release, the plaintiff did not have independent legal advice, and the plaintiff could not read agreement because he did not have his glasses); Peluck v. Pac. Machine & Blacksmith Co., 134 Or. 171, 178 (1930) (release agreement should be subject to close scrutiny where the parties were not dealing at arm's length, the plaintiff did not have the benefit of independent legal advice, and the plaintiff was in poor mental and physical condition at the time release was signed); Kim v. Allstate Ins. Co., 102 Or.App. 529 (1990) (material issues of fact existed precluding summary judgment as to whether, where the parties were not on equal footing, the plaintiff adduced evidence that she was induced to sign the release on the basis of misrepresentations and material omissions made by the defendant regarding the value and potential success of the plaintiff's legal claim). Here, plaintiff merely complains that she believe she did not receive consideration, but as noted above, she achieved a similar release in return as well as dismissal of the pending claim against her with prejudice. The court should grant summary judgment as to all claims she could have brought in the civil case brought by the Burtons.

However, plaintiff does assert that the libel/slander/defamation is ongoing. The website maintained by the Burtons, http://www.alwayssafezoe.com/Zoe_s_Bill.html, still contains an article that was published in the Bend Bulletin on June 6, 2010 which states that the Burtons sued the Deschutes Pet Lodge and plaintiff and said that

> an employee of the kennel, Martie Davidson, intentionally hit Zoe with a metal gate, leaving her with broken ribs and other internal injuries. When they came to pick up the dog, the Burtons were not told that she had suffered any injuries and discovered the problem days later, when they took her to an emergency veterinary hospital.
>
> After an investigation by the Deschutes County Sheriff's Office, Davidson, 40, was arrested and charged with one count of first-degree animal abuse. The case is scheduled to go to trial in August.
>
> ....

Page 7 - FINDINGS AND RECOMMENDATION

> The lawsuit also names the Deschutes Pet Lodge's owner, Maria George, and her company, Dabaka LLC, as defendants. The Burtons argue that George was negligent because she allowed Davidson to come in contact with the dog and did not take measures to prevent harm to animals staying at the facility.
>
> [The Burtons's counsel said] "It's an outrageous act, contemptible conduct by people that are supposed to be responsible for the dog,"
>
> ...
>
> "There is a direct causal link between what Davidson did and the death of this dog," he said. "There wasn't anything in between."

Interpreting the release as a bar to any future acts of defamation would be unreasonable. Indeed, given the lack of "known and unknown" language in the release, the only reasonable interpretation, given the strict interpretations courts give releases, is that only actionable conduct occurring as of the date of the stipulation has been released from further litigation. In Schenck v. Oregon Television, Inc., 146 Or.App. 430, 435, 934 P.2d 480 (1997), the Oregon Court of Appeals held that

> The gravamen of the tort of defamation is the injury to the plaintiff's reputation caused by a statement communicated to someone other than to the plaintiff. Shirley v. Freunscht, 303 Or. 234, 238, 735 P.2d 600 (1987) (citing to Lowe v. Brown, 114 Or. 426, 433-34, 233 P. 272, 235 P. 395 (1925); State v. Mason, 26 Or. 273, 277-78, 38 P. 130 (1894), and Prosser and Keeton, The Law of Torts 771, § 111 (5th ed 1984)). Under this definition, each publication is a discrete tort, because a new injury could occur upon each publication.

Plaintiff's complaint can be fairly read to allege that the continued publication of the allegedly defamatory statements is causing harm and each time the site is accessed and read, there is a discrete publication to a third party. Accordingly, the release does not bar any cause of action for libel or defamation occurring after the date of the release.

However, federal courts are courts of limited jurisdiction and only have jurisdiction over state

Page 8 - FINDINGS AND RECOMMENDATION

law claims to the extent that such claims are "related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A state law claim is part of the same case or controversy within the meaning of 28 U.S.C. § 1367 when it shares a common nucleus of operative fact with a federal claim and the state and federal claim would normally be tried together. Bahram pour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004).

Although the claim of continuing libel/defamation arises out of the same type of statements the Burtons used in allegedly compelling Deschutes County to undertake a malicious prosecution in violation of plaintiff's constitutional rights, the claim does not share a common nucleus of operative fact with the allegedly unconstitutional component of the prosecution. The libel claim is based on continued false assertions of plaintiff injuring their dog, while the constitutional claims involve accusations of lack of probable cause and impingement of the right to trial by the state actors. None of the facts supporting the federal claims against the state actors are relevant to the remaining state law claim against the Burtons. Accordingly, the libel/slander/defamation claim against the Burtons should be dismissed.

In the alternative, assuming the court has jurisdiction, the libel/slander/defamation claim should be dismissed as time-barred. An action for defamation must be commenced within one year. ORS § 12.120. Plaintiff instituted this action on January 11, 2015, and, as noted, the website hosted by the Burtons continues to publish allegedly defamatory material. The issues thus becomes whether the so-called single publication rule applies. It is not clear if Oregon follows the single publication rule.[2]

---

[2] In a 1986 district court case, Judge Frye noted that the Oregon courts have not adopted either the single publication rule or the multiple publication rule. She further stated that,

Page 9 - FINDINGS AND RECOMMENDATION

Under a multiple publication rule, each repetition of a libel would create a new cause of action. See, e.g., Churchill v. State, 378 N.J. Super. 471, 876 A.2d 311 (App. Div. 2005). Under such rule, each time a libelous article is brought to the attention of a third person, a new publication has occurred and each publication is a separate actionable tort. See, e.g., Lewis v. Reader's Digest Ass'n, Inc., 162 Mont. 401, 512 P.2d 702 (1973). However, this rule has been modified by the fairly general recognition of the single publication rule, under which a single issue or single edition of a periodical or book constitutes a single publication. See, e.g., McGuiness v. Motor Trend Magazine, 129 Cal. App. 3d 59, 180 Cal. Rptr. 784 (2d Dist. 1982). Generally, under the single publication rule, any single integrated publication, such as one edition of a newspaper, book, or magazine, or one broadcast, is treated as a unit, giving rise to only one cause of action, even if sold in multiple copies, and in numerous places, at various times. See, e.g., Van Buskirk v. The New York Times Co., 325 F.3d 87 (2d Cir. 2003). However, it has been held that copies or reprints of a libel, whether in the same periodical which originally published it or in another periodical, did not constitute a single publication within the meaning of the single publication rule, and thus each copy or reprint of the alleged defamation gave rise to a new cause of action. See, e.g., Graham v. Today's Spirit, 503 Pa. 52, 468 A.2d 454, 41 A.L.R.4th 535 (1983) (holding that, upon evidence that two allegedly defamatory articles were printed and circulated in two separate newspapers published by the same defendant on the same date, that the fact that the articles were essentially identical did not mean that there had been a single publication). The single publication rule can apply to internet publishing.

---

however, many more than a majority of the states now follow the single publication rule. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, n. 8 (1984). Thus, she applied the single publication rule and applied a limitations period beginning on the date of the first publication of the alleged libel. I have been unable to find any subsequent Oregon case law suggesting that Oregon follows or does not follow the single publication rule.

Page 10 - FINDINGS AND RECOMMENDATION

E.g., Van Buskirk, 325 F3d at 90.

The Ninth Circuit's application of the single publication rule with respect to a Privacy Act claim is instructive:

> Courts that have considered the issue of when Internet-based information is properly considered "published" have done so largely in the context of state defamation suits. These courts have generally concluded that the posting of information on the web should be treated in the same manner as the publication of traditional media (i.e., books, newspapers, magazines, and radio and television broadcasts), that is, that traditional media's "single publication rule" should apply to postings on the Internet.[footnote omitted] Under the single publication rule, "any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication." Restatement (Second) of Torts § 577A(3) (1977). Under this rule, the aggregate communication can give rise to only one cause of action in the jurisdiction where the dissemination occurred, and result in only one statute of limitations period that runs from the point at which the original dissemination occurred. Zuck v. Interstate Publ'g Corp., 317 F.2d 727, 729–30 (2d Cir.1963).
>
> Courts that have extended the single publication rule to Internet publishing have done so on the premise that published web content is functionally identical to published traditional print media and, accordingly, Internet publication should be considered "published" in the same manner as is a print edition.[footnote omitted] While that premise is not entirely accurate, [footnote omitted] we agree that the analogy between Internet and print publication is sufficiently apt to be serviceable. Internet publication is a form of "aggregate communication" in that it is intended for a broad, public audience, similar to print media.[footnote omitted] In both print and Internet publishing, information is generally considered "published" when it is made available to the public.[footnote omitted] Once information has been published on a website or print media, there is no further act required by the publisher to make the information available to the public....
>
> In addition to functional similarities between print and Internet publication, the same considerations that compel application of the first publication rule to traditional forms of aggregate communication are equally compelling in the context of Internet publication. The single publication rule is designed to protect defendants from harassment through multiple suits and to reduce the drain of libel cases on judicial resources. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Those same considerations present themselves in relation to Internet publishing, and militate in favor of applying the single publication rule to Internet publication. Given that "[c]ommunications posted on Web sites may be viewed by thousands, if not millions, over an expansive geographic

Page 11 - FINDINGS AND RECOMMENDATION

area for an indefinite period of time," allowing Internet publications to be subject to a multiple publication rule "would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants. Inevitably, there would be a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the Internet, which is, of course, its greatest beneficial promise." Firth, 747 N.Y.S.2d 69, 775 N.E.2d at 466. Such concerns have motivated state courts to extend the single publication rule to Internet publication,[footnote omitted] and federal courts sitting in diversity have done likewise.

Oja v. U.S. Army Corps of Engineers, 440 F.3d 1122, 1130-32 (9th Cir. 2006).

Applying the Ninth Circuit's logic to the alleged libel in this case, the single publication rule applies to the article continuously maintained on the Burtons's website. Plaintiff does not provide evidence of allegedly libelous or defamatory conduct, after the date of the release, beyond the website. Plaintiff's counsel's letter of March 20, 2013, establishes plaintiff's knowledge of that alleged defamatory conduct at least as of that date. Plaintiff instituted this action more than one year after that date. Accordingly, plaintiff's libel/slander/defamation claim is time-barred.

The Burtons's motion for summary judgment should be granted.

B.   Defendant Chris Kaber's Motion to Dismiss (#16)

Defendant Kaber contends the claims against him should be dismissed because plaintiff failed to allege them within the applicable statute of limitations, plaintiff failed to sue Kaber in his individual capacity under 42 U.S.C. § 1983, and failed to allege compliance with the Oregon Tort Claims Act.

Plaintiff concedes that the false arrest claim pursuant to the Fourth Amendment should be dismissed. Plaintiff further concedes her state law claims of false arrest and malicious prosecution against Kaber also must be dismissed. Although plaintiff states she "would seek to amend" her

claims to allege a federal claim of malicious prosecution against Kaber in his individual capacity. Plaintiff has not yet moved to amend and thus the motion to dismiss should be granted without prejudice to seek leave to amend.

C.  Defendants Deschutes County's and Jennifer Gaspard's Motion to Dismiss (#18)

Defendant Deschutes County moves to dismiss the claims against it because it is not responsible for the prosecutorial acts of the Deschutes County District Attorney's Office. Defendant Gaspard moves to dismiss the Fourth Amendment false arrest claim and state law false arrest claim against her as time-barred. In addition, defendant Gaspard asks the court to decline jurisdiction over the remaining state law malicious prosecution claim against her.

Under Oregon law, district attorneys are law officers of the state. Oregon Constitution Article VII § 17; State v. Clark, 291 Or. 231, 245, 630 P.2d 810, cert. denied, 454 U.S. 1084, 102 S.Ct. 640, 70 L.Ed.2d 619 (1981); State v. Coleman, 131 Or.App. 386, 390, 886 P.2d 28, review denied, 320 Or. 588, 890 P.2d 994 (1995). The state allocates money to pay or help pay the salaries of district attorneys and deputy district attorneys. See 2003 Oregon Laws Chapters 9 and 624. District attorneys are elected by the voters of each county, and, when a vacancy occurs, the governor appoints a person to fill the vacancy until the next election. ORS § 8.610 and ORS § 8.640. The county merely provides the district attorney and deputy district attorneys with office space, facilities, supplies, and assistance. ORS § 8.850. The district attorney has the power to appoint deputy district attorneys. ORS § 8.760 and ORS § 8.780. Deputy district attorneys are "subject to the direction of the district attorney". ORS § 8.780. Deputy district attorneys serve at the pleasure of the district attorney. 1984 WL 192152 (Or.A.G.). Accordingly, all prosecutors within the district attorney's office constitute

Page 13 - FINDINGS AND RECOMMENDATION

a state entity, not a county entity. See Kleinman v. Multnomah County, 2004 WL 2359959, at *5 (D.Or. 2004) (the Multnomah County District Attorney's Office is a state entity).

Plaintiff argues that defendant Deschutes County is being sued for having customs and policies of prosecuting individuals in violation of their constitutional rights. Plaintiff argues that merely because the individuals who establish these polices are state employees should not matter because the policies are only implemented in Deschutes County. However, as another judge of this court has noted, Monell liability cannot be attributed to Deschutes County for the actions of the District Attorney, a non-County policymaker. Foster v. Flaherty, Case No. 11-6115-AA (order dated October 24, 2012) at p. 14. Accordingly, the claims against the County for malicious prosecution, declaratory judgment, and punitive damages (claims 1-5) should be dismissed.

Plaintiff concedes that the false arrest claims against Gaspard should be dismissed. Plaintiff does not address dismissal of the state law claim for malicious prosecution against Gaspard. The court should dismiss this sole remaining state law claim without prejudice to seek leave to amend to allege it along with related federal claims.

Plaintiff asks that should the County's motion be granted that she be allowed to amend to name individual defendants. Plaintiff also notes an intent to seek amendment of the claims against Gaspard to allege a claim under section 1983 for malicious prosecution. Accordingly, the County defendants' motion to dismiss should be granted without prejudice to seek leave to amend.[3]

## CONCLUSION

For the reasons stated above, the Burton defendants' motion for summary judgment (#10) should be granted. In addition, defendant Kaber's (#16) and defendants Gaspard and Deschutes

---

[3] I express no opinion as to the propriety of any proposed amendments.

Page 14 - FINDINGS AND RECOMMENDATION

County's motion to dismiss (#18) should be granted without prejudice to seek leave to amend.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 24 day of June 2015.

THOMAS M. COFFIN
United States Magistrate Judge

Page 15 - FINDINGS AND RECOMMENDATION